# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
November 11, 2026
Thomas B. Plunkett, III
Clerk

No. 25-10679

Joshua M. Carpenter, Independent Executor *for the Estate of* Jeffrey S. Carpenter,

*Plaintiff—Appellee*,

*versus*

Twin City Fire Insurance Company,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:23-CV-769

Before Stewart, Graves, and Wilson, *Circuit Judges*.

Per Curiam:*

This case arises from a contract dispute that turned into an insurance dispute. Jeffrey Carpenter sued his former employer for breach of contract. During the lawsuit, Carpenter approached his former employer's insurer—Twin City Fire Insurance Company—with an offer to settle, but Twin City

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

declined. The jury subsequently awarded Carpenter damages exceeding policy limits, creating a *Stowers* claim under Texas law.

After it was assigned to him via turnover order, Carpenter asserted that *Stowers* claim against Twin City in a second lawsuit. At summary judgment, the district court ruled for Carpenter, concluding that Twin City breached its duty to settle his original claim. We affirm.

## I.

Jeffrey Carpenter was an employee at Southwest Housing Management. When Southwest's owners sold the company to a third party, Carpenter's position was eliminated. Before the sale, the company's owners promised him part of the sale proceeds in exchange for his staying with the company until the deal closed. When the sale went through, Carpenter received none of those profits. In 2008, Carpenter sued Southwest, its owners, and related entities (collectively, Southwest) in Texas state court, alleging breach of contract.

Carpenter knew that Southwest carried an employment practices insurance policy (the Policy) provided by Twin City Fire Insurance Company, and he believed that the Policy covered his claim against Southwest. However, when he offered to settle his claim within the Policy's coverage limits during the underlying litigation, Twin City declined. Carpenter then prevailed at trial. The jury found that Southwest had breached its agreement with Carpenter, and the jury awarded more damages than the Policy would cover, giving rise to a *Stowers* claim against Twin City.

Texas's *Stowers* doctrine creates a duty for insurers to settle third-party claims against their policyholders when "(1) the claim against the insured is within the scope of coverage, (2) there is a demand within policy limits, and (3) the terms of the demand are such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the

insured's potential exposure to an excess judgment." *Am. Guarantee & Liab. Ins. Co. v. ACE Am. Ins. Co.*, 990 F.3d 842, 847 (5th Cir. 2021); *see G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544, 547 (Tex. Comm'n App. 1929). If those conditions are met, and if the insurer's negligent failure to settle results in a judgment against the insured that exceeds policy limits, then the insurer is liable for the whole judgment—including the excess damages. *In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 267 (Tex. 2021) (citation omitted).

Carpenter filed his *Stowers* claim in Texas state court in 2023.[1] Twin City then removed the case to federal court and moved for summary judgment. It argued that two provisions in the Policy excluded Carpenter's underlying claim from coverage. The district court denied Twin City's motion. Following that denial, Twin City stipulated to every element of *Stowers* liability except whether Carpenter's underlying claim fell within the scope of the Policy. Carpenter responded with a motion for summary judgment on that issue. The district court granted Carpenter summary judgment and awarded him damages that included post-judgment interest on the entire underlying award. Twin City timely appealed, renewing its coverage-exclusion arguments and disputing the district court's damages calculation.

## II.

We review the grant of summary judgment *de novo*, applying the same legal standards as the district court. *Certain Underwriters at Lloyd's, London v. Axon Pressure Prods. Inc.*, 951 F. 3d 248, 255 (5th Cir. 2020). Summary

---

[1] Although the *Stowers* claim originally belonged to Southwest, as Twin City's insured, the state court assigned it to Carpenter via a turnover order after Southwest exhausted the Policy's limits while defending the underlying case.

judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because the interpretation and enforcement of an insurance policy are questions of law, not fact, they are appropriately addressed via summary judgment. *See Anadarko Petroleum Corp. v. Alt. Env't Sols. Inc.*, 169 F. 4th 542, 548 (5th Cir. 2026). We construe "all facts and draw all reasonable inferences in the light most favorable to the non-moving party." *Miller v. Michaels Stores, Inc.*, 98 F. 4th 211, 216 (5th Cir. 2024).

This case is in federal court on diversity jurisdiction, so Texas substantive law governs. *Packard v. OCA, Inc.*, 624 F.3d 726, 729 (5th Cir. 2010). In determining questions of Texas law, we look to the decisions of the Supreme Court of Texas, which are binding. *Id.* (quoting *United Teacher Assocs. Ins. Co. v. Union Lab. Life Ins. Co.*, 414 F.3d 558, 565 (5th Cir. 2005)). Decisions from Texas intermediate appellate courts may provide guidance, but are not controlling. *Id.* If the Supreme Court of Texas has not ruled on the controlling legal questions in this appeal, we must determine, to the best of our ability, how it would do so. *Id.*

## III.

We first (A) analyze whether the Policy covered Carpenter's underlying claim against Southwest. We conclude that it did and that Twin City is therefore liable to Carpenter under the *Stowers* doctrine. We then (B) explain why the district court properly calculated damages when it granted summary judgment for Carpenter.

## A.

### 1.

Twin City's employment practices liability policy provides: "The Insurer shall pay Loss on behalf of the Insureds resulting from an Employment Practices Claim first made against the Insureds during the Policy Period . . . for an Employment Practices Wrongful Act by the Insureds." The Policy defines "Loss" as "the amount that Insureds are legally obligated to pay as a result of a Claim, including, without limitation, Defense Costs, damages, settlements, judgments, and pre- and post-judgment interest." In short, the Policy generally covers any event that qualifies as a "Loss."

The Policy explicitly excludes certain conditions, items, and events from coverage. Two of these carveouts are relevant to this appeal. The first coverage exception excludes certain conditions from recognition as Losses. It states that "Loss" shall not include "salaries, wages or bonuses, except as a component of a front or back pay award." We refer to this exception as the "back pay" exception, because front pay is not at issue.[2] The second exception independently excludes severance payments from coverage, even though they could otherwise qualify as a Loss under the Policy. The Policy states: "Other than Defense Costs, the Insurer shall not pay Loss for any Claim . . . for employment termination severance payments[.]" We refer to this exception as the "severance payment" exception.

[2] Technically, what we call the "back pay exception" is an *exception to an exception*. That is, the Policy's "Loss" definition excludes "salaries, wages, or bonuses," *except when as a component of a front or back pay award*. We treat this provision together with the severance payment exception for ease of reference.

**2.**

The question is whether either exception excludes Carpenter's underlying claim from coverage under the Policy.[3] As we explained earlier, Carpenter's underlying claim is that Southwest reneged on its agreement to compensate him for remaining with the company until it was sold. If that agreement with Southwest did not qualify as back pay, or it was a severance payment, then the agreement was not covered by the Policy. To decide the issue, we must construe each coverage exception's key terms—"back pay" and "employment termination severance payment." The Policy does not define either term.

Texas law requires that insurance policies be construed using the same rules of construction applicable to contracts. *Privilege Underwriters Reciprocal Exch. v. Mankoff*, 733 S.W.3d 1, 4 (Tex. 2026) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995)). When an insurance policy's meaning is disputed, a court's driving objective is to ascertain and give effect to the parties' expressed intent. *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 763 (Tex. 2018). If a policy uses unambiguous language, it must be enforced as written. *See URI, Inc.* at 757. But if a policy's meaning is unclear, Texas law requires ambiguous language to be construed in favor of the insured. *Privilege Underwriters*, 733 S.W.3d at 4. When a term at issue "appears in a limitation on coverage," Texas courts particularly

[3] We take as given that the underlying claim would qualify for coverage but for these exceptions. In its reply brief, Twin City argues that Carpenter failed to meet his initial burden to establish that his claim fell into the scope of coverage. But Twin City did not make that argument to the district court or in its initial appellate brief, so it has waived the contention twice over. *See Moore v. LaSalle Mgmt. Co., L.L.C.*, 41 F.4th 493, 509 (5th Cir. 2022) (declining to consider an argument raised for the first time on appeal); *United States v. Ma*, 178 F.4th 884, 891 (5th Cir. 2026) (declining to consider an argument raised for the first time in an appellate reply brief).

favor the insured's construction, "even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Id.* (citation omitted).

When an insurance policy does not define a term, Texas courts give the language "its plain, ordinary meaning unless something else in the policy shows that the parties intended a different, technical meaning." *Privilege Underwriters*, 733 S.W.3d at 4 (Tex. 2026); *see also* ANTONIN SCALIA & BRYAN GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 69 (2012) (similar). As the parties agree, the Policy does not indicate that either "back pay" or "employment termination severance payment" bears anything other than those terms' plain meanings. We determine plain meaning by looking first to dictionary definitions and then to a term's usage in statutes, court decisions, and similar authorities. *Privilege Underwriters*, 733 S.W.3d at 5.

**i.**

The Policy's back pay exception removes "salaries, wages or bonuses" from coverage, except when "as a component of a . . . *back pay* award." (emphasis added). Carpenter argues the term "back pay" should be interpreted according to its lay definition—owed but unpaid compensation. Twin City urges the court to adopt a narrower, more technical interpretation—namely, equitable relief available to employees following adjudicated adverse employment actions.

Dictionaries define "back pay" simply as an overdue payment or a payment in arrears, in line with Carpenter's proffered interpretation. The American Heritage Dictionary of the English Language defines "back pay"

as compensation "being owed or due from an earlier time."[4] The Oxford English Dictionary similarly defines the term as "[i]n arrear, overdue, behindhand. Of rent, taxes, etc."[5] Neither definition suggests a narrow, specialized meaning set around legal remedies or equitable relief.

Texas authorities, on the other hand, evoke a narrower, remedies-based definition. State statutes regularly use "back pay" to reference equitable relief available to an employee following an adverse employment action. *E.g.*, TEX. LAB. CODE § 21.258(b)(1) (employment discrimination context); TEX. LOCAL GOV. CODE § 158.012(b)(1) (county civil service context). State judicial opinions do the same. *See, e.g.*, *Dell, Inc. v. Wise*, 424 S.W.3d 100, 114 (Tex. App.—Eastland 2013, no pet.) ("'Back pay' is defined as those lost wages that accrue from the date of termination through trial."). As do the Texas Pattern Jury Charges. *See, e.g.*, TEX. PATTERN JURY INSTRUCTIONS § 115.30 ("Back pay is that amount of wages and employment benefits that [a person] would have earned if he had not been subjected to his employer's unlawful conduct. . . .").

These sources center the definition of "back pay" around prior wrongful termination—something which was not at issue in Carpenter's underlying dispute.

---

[4] *Back* (adj.), THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (online edition), https://perma.cc/C55U-5XNL (last visited Nov. 10, 2026) (as in "back pay").

[5] *Back* (adj.), THE OXFORD ENGLISH DICTIONARY (online edition), https://doi.org/10.1093/OED/7055620916 (last visited Nov. 10, 2026) (as in "back pay").

Although the Policy dates from 2002, we may look to more recent dictionary definitions because "dictionaries tend to lag behind linguistic realities." ANTONIN SCALIA & BRYAN GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 419 (2012). Regardless, dictionaries published before the Policy yield the same result. *See Back* (adj.), THE OXFORD ENGLISH DICTIONARY (2d ed. 1989).

Relevant authorities thus point to two distinct plain meanings for "back pay": A simple overdue payment, versus a specific legal remedy at times owed to wrongfully terminated employees. We are left to make a close call.

But a tie goes to the insured. The ambiguity in the Policy's language is enough for us to adopt Carpenter's interpretation. As explained, Texas courts interpret ambiguous insurance provisions in favor of coverage, especially when the terms at issue are exclusionary policy terms. *Privilege Underwriters*, 733 S.W.3d at 4.[6] The back pay exception fits that category. Because Carpenter's agreement with Southwest was for compensation for work that he had already performed, the damages awarded in his case against Southwest qualified as back pay under the Policy's language. Accordingly, Carpenter satisfies this coverage exception for the purpose of our review.

**ii.**

Nonetheless, if Carpenter's agreement with Southwest involved "employment termination severance payments," then the agreement and the proceeds due to him under it are excluded from Policy coverage. Here, the parties offer similar definitions for "severance payment": essentially, any payment made to an employee upon his termination. But they dispute the term's application to Carpenter's underlying agreement. Twin City argues that the agreement involved a severance payment because Carpenter was terminated at the same time his entitlement to payment accrued under the agreement—*i.e.*, when the sale closed. Carpenter demurs that the agreement did not concern a severance payment because his entitlement to

---

[6] This principle—derived from the Latin maxim "*contra proferentem*"—embodies an equitable legal doctrine "centuries older than our Republic." *Loper Bright Enters v. Raimondo*, 603 U.S. 369, 435 n.5 (2024) (Gorsuch, J., concurring).

sale proceeds revolved around his remaining with the company until its sale, not until his termination. That is, Carpenter contends, Southwest was supposed to pay Carpenter to stay, not to leave.

Dictionary definitions cabin "severance payments" as those made to employees solely because of their termination. For example, the Oxford English Dictionary defines "severance pay" as "[m]oney paid in compensation to one whose contractual employment is terminated."[7] The American Heritage Dictionary similarly defines "severance pay" as "[a] sum of money usually based on length of employment for which an employee is eligible upon termination."[8] In each, the employee's termination serves as the prerequisite for payment.

Texas statutes and judicial opinions likewise describe the employee's termination as a necessary condition for a severance payment. Multiple statutory provisions define "severance pay" as income paid to an employee "on termination of employment." *E.g.*, Tex. Lab. Code § 207.049 (unemployment compensation context); Tex. Fam. Code § 158.214(a) (parent-child relationship context). Decisions of Texas courts reference "severance pay" in the same manner: as that owed to an employee primarily because of his termination. *See, e.g.*, *Colorado v. Tyco Valves & Controls, L.P.*, 432 S.W.3d 885, 886 (Tex. 2014); *ICP, LLC v. Busse*, No. 09-17-00409, 2018 WL 3887636 (Tex. App.—Beaumont 2018, no pet.).

Dictionaries, statutes, and judicial opinions thus somewhat intuitively point in one direction, namely, that the plain meaning of "employment

---

[7] *Severance pay* (n.), The Oxford English Dictionary (online edition), https://doi.org/10.1093/OED/7424101503 (last visited Nov. 10, 2026).

[8] *Severance pay* (n.), The American Heritage Dictionary of the English Language (online edition), https://perma.cc/8R4S-GP66 (last visited Nov. 10, 2026).

termination severance payment" centers around an employee's *termination*. And Carpenter's agreement with Southwest did not turn on his termination. Rather, as Carpenter contends—and as the jury found in the underlying trial—Carpenter's bargain with Southwest involved his remaining with the company "as long as needed . . . to help make [Southwest's] sale happen," in exchange for a portion of the sale proceeds. True enough, Carpenter was terminated incident to the company's sale, but his termination did not animate the agreement. Indeed, as the district court noted, Carpenter did not definitively know that his position would be terminated in the sale until some point while it was pending. *Carpenter v. Twin City Fire Ins. Co.*, No. 3:23-CV-00769, 2025 WL 1170315, at *3 (N.D. Tex. Apr. 22, 2025) (citation omitted). Given these facts, it is difficult to conclude that Carpenter's underlying agreement created a "severance payment" under any traditional understanding of the term.

Twin City points to three instances in which Texas courts have referred to similar pay-for-stay agreements as "severance pay." But to the extent these opinions are persuasive (none are controlling), they carry less weight than Twin City says they do. Each involves a court merely referencing, and at best echoing, the term "severance pay" as used in underlying litigation documents.[9] Put differently, in no case offered by Twin City does a Texas court independently expound the meaning of "severance payment" to encompass an agreement like the one Carpenter had with Southwest. To the contrary, Texas courts that apply the term "severance

---

[9] *See Catalanotto v. Meador Oldsmobile LLC*, No. 02-10-00044-CV, 2011 WL 754413 (Tex. App.—Fort Worth Mar. 3, 2011, no pet) (adopting the term "severance pay" as framed in litigant memo); *Goldman v. White Rose Dist. Co.*, 936 S.W.2d 393 (Tex. App.—Fort Worth 1997) (quoting litigant's use), *vacated pursuant to settlement*, 949 S.W.2d 707 (Tex. 1997); *Stout v. Smithfield Bioenergy, LLC*, No. 3:10-CV-1185, 2010 WL 5487843, at *1 (N.D. Tex. Dec. 30, 2010) (noting litigant's reference to a post-sale severance package).

payment" typically do so in line with the plain meaning we set forth above. *See, e.g.*, *Kelly v. Kelly*, 634 S.W.3d 335, 352 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (referring to "severance payments" that a party received following his termination).

The Policy term's modifier—"employment termination"—gilds the lily. Though we believe "severance payment," even without the modifier, clearly denotes a payment contingent upon an employee's discharge rather than his retention, the Policy's addition of "employment termination" resolves any doubt. *See Philadelphia Indem. Ins. Co. v. White*, 490 S.W.3d 468, 477 (Tex. 2016) ("[R]edundancies may be used for clarity, emphasis, or both.") (citation omitted).

Because Carpenter's agreement was contingent upon Southwest's sale, and not his termination, it did not qualify as an "employment termination severance payment" under the Policy. Therefore, the severance exception did not exclude Carpenter's underlying agreement, and Twin City had a duty to cover the amounts to which he was entitled.

**B.**

Having found that Twin City breached its *Stowers* duty, we turn to Twin City's alternative request that we modify the district court's damages award. Twin City asserts that, because Carpenter received post-judgment interest in his underlying case against Southwest, the district court violated 28 U.S.C. § 1961(a)'s purpose by including post-judgment interest in its final judgment (essentially, awarding interest-on-interest).

We decline Twin City's invitation to consider whether § 1961(a)'s purpose is satisfied. Where a statute's meaning is plain, we do not consider its underlying purpose. *Tex. Ed. Agency v. U.S. Dep't of Educ.*, 908 F.3d 127, 135 (5th Cir. 2018) (citing *BedRoc Ltd., LLC v. United States*, 541 U.S. 176,

183, (2004)). Section 1961(a)'s meaning is plain: "Interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Our precedent—and indeed Twin City's briefing—recognizes that the statute necessitates post-judgment interest. *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010) ("Post-judgment interest is awarded as a matter of course" and "is not discretionary."). Therefore, we decline to modify the district court's final judgment in the manner requested.

## IV.

For the reasons stated, the district court properly granted Carpenter summary judgment. And the court properly calculated damages in doing so.

AFFIRMED.